# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | } | |
| LISA L. CALLOWAY, | } | |
| | } | Case No. 08-40419-JJR-13 |
| Debtor. | } | |

_____

| | | |
|---|---|---|
| CHASE HOME FINANCE, LLC, | } | |
| | } | |
| Plaintiff, | } | |
| v. | } | Adv. P. No. 09-40107-JJR |
| | } | |
| LISA L. CALLOWAY, and | } | |
| LINDA B. GORE, in her capacity as | } | |
| Chapter 13 Trustee, | } | |
| | } | |
| Defendants. | } | |


## <u>MEMORANDUM OPINION</u>

Chase Home Finance, LLC ("Chase") commenced this adversary proceeding against Linda B. Gore, the Standing Chapter 13 Trustee for this Division (the "Trustee"), and Lisa L. Calloway, the debtor in the above chapter13 bankruptcy case (the "Debtor").[1]  The parties admit that the legal description of a parcel of real property was inadvertently omitted from a prepetition security deed made by the Debtor and now held by Chase.[2]  In its complaint (AP Doc. 1),[3] Chase asked the Court

_____

[1]The Debtor filed for relief under chapter 13 of the Bankruptcy Code on March 4, 2008.

[2]As used in this opinion, the term "legal description" refers to a metes-and-bounds description of property or a reference to a recorded plat of property.  Such a description permits an interested party, including a prospective purchaser, to determine the exact location and quantity of the property being described.

[3]A document filed in the bankruptcy case is referred to as a "BK Doc. __", a document filed in the adversary proceeding is referred to as an "AP Doc. __", and those filed in both are referred to only by their AP Doc. number.

to reform the security deed and thereby cause it to reflect that it encumbers the omitted parcel and declare that the Trustee is not entitled to exercise her strong-arm avoidance powers under Section 544(a)(3) of the Bankruptcy Code[4] as a hypothetical bona fide purchaser of the omitted property. The Trustee filed a Motion For Summary Judgment (AP Doc. 11) in which she argues that she does qualify as a hypothetical bona fide purchaser, and as such may avoid any interest Chase might have in the omitted property. Claiming that the omitted property remains property of the Debtor's bankruptcy estate and that it is unencumbered, the Trustee filed a motion (BK Doc. 56) to amend the Debtor's chapter 13 plan and thereby provide for a sale of the property with the proceeds to be distributed to unsecured creditors, or if the Debtor elects not to sell the property, then for her plan to be modified to provide for full payment of all unsecured claims.[5]

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); therefore, the Court has authority to enter a final order. In compliance with Rule 7052(a) of the Federal Rules of Bankruptcy Procedure, the following shall constitute the Court's findings of fact and conclusions of law.[6] For the reasons stated below, the Trustee's Motion is due to be granted in part, and denied in part.

---

[4]11 U.S.C. § 101 *et seq*, and herein the "Bankruptcy Code" or "Code." Unless the context indicates otherwise, all "Section" references are to a section, subsection or other subdivision of the Code.

[5]If the omitted parcel is property of the Debtor's estate it would be available for liquidation in a chapter 7 case, and because of the parcel's probable value the best interest of creditors test in Section 1325(a)(4) would require that the Debtor's plan pay unsecured claims in full.

[6]All "Bankr. Rule" references are to the Federal Rules of Bankruptcy Procedure.

2

<u>FINDINGS OF FACTS</u>:

<u>*Introduction*</u>

With one critical exception, the facts on which this case may be decided are not in dispute and for the most part may be gleaned from the tax records and recorded documents that pertain to the title of the two parcels of property that are the subject matter of this adversary proceeding. Those records and documents confirm that through various prepetition deeds the Debtor became the owner of two adjacent parcels of real property located in Polk County, Georgia. One parcel is improved with a single family residence (the "Improved Parcel"), and that residence has a street and postal address of 841 Puckett Road, Silver Creek, Georgia 30173. The other parcel, which also abuts Puckett Road, is vacant (the "Vacant Parcel" and together with the Improved Parcel, the "Two Parcels"). Attached to the Complaint were copies of the Polk County Board of Tax Assessor's records, and copies of the recorded documents appearing in the public records of Polk County, Georgia,[7] all of which pertain to the Debtor's titles and interests in the Two Parcels during the times relevant to this opinion.[8]

<u>*Debtor's title to the Vacant Parcel*</u>

By a deed dated and recorded on October 11, 1994, Dewitt Holsey and the Debtor were conveyed title as co-tenants to the Vacant Parcel; the Debtor's name appeared on the deed as Lisa

---

[7]Conveyances, including deeds and security deeds, and other documents relating to titles to real property in Polk County are recorded in the Office of the Clerk of the Superior Court of that County.

[8]No party challenged the authenticity of the copies of the tax records or recorded documents.

3

L. Holsey.[9]  Thereafter, by a quit claim deed dated June 3, 1999, and a warranty deed dated November 22, 1999, both duly recorded in the public records, Dewitt Holsey conveyed all his interest in the Vacant Parcel to the Debtor (as Lisa L. Holsey); the result being that the Debtor became the sole owner of the Vacant Parcel.[10]  The following is the legal description of the Vacant Parcel as it appeared in the 1994 deed and the two 1999 deeds:

> All that tract or parcel of land lying and being in Land Lot 67 in the 21st District and 3rd Section of Polk County, Georgia and being more particularly described as follows:
>
> Beginning at a point located on the north land lot line of Land Lot 67 said point being north 89 degrees 52 minutes 50 seconds east a distance of 406.90 feet from the intersection of the northly right of way of Puckett Road (a 40 foot right of way) and the north land lot line of Land Lot 67; run thence north 89 degrees 52 minutes 50 seconds east along the north land lot line of Land Lot 67 a distance of 160.47 feet to a point; run thence north 88 degrees 27 minutes 48 seconds west a distance of 357.10 to a point; run thence north 0 degrees 07 minutes west a distance of 150.15 feet to a point located on the north land lot line of Land Lot 67 and the point of beginning, all as more particularly shown as 1.27 acres north of Puckett Road designated in the name Carla Holiday according to a plat of Dock King Estate prepared by Robert R. Angle, Georgia Registered Land Surveyor # 1742, dated September 4, 1987, and recorded in Plat Book M, Page 117, Polk County, Georgia Land Records.
>
> This is a part of the same property as that contained in a Warranty Deed from Betty A. King to Clara Holiday, dated October 26, 1987, and recorded in Deed Book 390, Page 165, Polk County, Georgia Land Records.

### *Debtor's title to the Improved Parcel*

Pursuant to six quit claim deeds bearing various dates in 2003, but all consecutively recorded on August 2, 2004, the Improved Parcel was conveyed to the Debtor as "Lisa Stokes (f/k/a Lisa

---

[9]Exhibit D to the Complaint.

[10]Exhibits E and F to the Complaint.

4

Holsey)."[11]  The quit claim deeds each contained the following legal description of the Improved

Parcel:

> All that tract or parcel of land situated, lying and being in Land Lot 67 in the 21st District and 3rd Section of Polk County, Georgia, and being more particularly described as follows:
>
> Beginning at the northeast corner of Land Lot 67 and from said beginning point, running south 60 degrees 07 minutes 23 seconds west, 98.04 feet to the northerly right of way of Puckett Road (50 foot right of way); thence running southwesterly along said right of way 308.45 feet to a point marked by a 1/2 inch rebar; thence north 01 degree 42 minutes 32 seconds west, 160.47 feet to a point; thence north 88 degrees 11 minutes 47 seconds east, 300.22 feet to the point of beginning.

### *Name Change Deed and Security Deed*

On October 25, 2004 the Debtor executed a quit claim deed conveying the Vacant Parcel to

herself (the "Name Change Deed").[12]  The grantor in the Name Change Deed was "Lisa L. Holsey

n/k/a Lisa L. Stokes, a now married woman" and the grantee was "Lisa L. Stokes, a married

woman."  The Vacant Parcel was described in the Name Change Deed by the same legal description

as that contained in the previous deeds discussed above under which the Debtor acquired her title

to the Vacant Parcel.

On the same day the Debtor executed the Name Change Deed, she also executed a security

deed (the "Security Deed") in favor of Mortgage Electric Registration Systems, Inc., as nominee for

---

[11]Exhibit G to the Complaint.  Each of the quit claim deeds stated that the grantor therein was "an heir at law of Dock King, deceased, who previously owned the above described property."  Although not relevant to this opinion, the Debtor must have had some connection with the Improved Parcel before it was deeded to her via the six quit claim deeds.  At the top of the deed dated October 11, 1994, conveying the Vacant Parcel to the Debtor and Dewitt Holsey, is a handwritten notation stating: "Return Document to Lisa L. Holsey 841 Puckett Rd Silver Creek GA 30173"– the street address of the Improved Parcel.

[12]Exhibit H to the Complaint.

5

Access National Mortgage ("MERS"), to secure a loan in the amount of $84,448.00[13]  The Debtor's

name as grantor in the Security Deed was shown as "Lisa L. Stokes."  The Security Deed was later

assigned by MERS to Chase.[14]  According to the text of the Security Deed, the property it purported

to encumber was–

> the following described property located in Polk County, Georgia:
>
> SEE EXHIBIT 'A' ATTACHED HERETO AND BY THIS REFERENCE MADE
> A PART HEREOF.
>
> which has the address of 841 PUCKETT ROAD (Street) SILVER CREEK (City),
> Georgia  30173 (Zip Code) ("Property Address").

The parties readily admit that the Debtor and MERS intended for the Security Deed to

encumber both the Vacant Parcel and the Improved Parcel, but a mistake was made and only the

legal description of the Vacant Parcel was included in the Exhibit attached to the Security Deed; the

legal description of the Improved Parcel was apparently overlooked.[15]  Although neither the text of,

nor the attached Exhibit to the Security Deed contained the legal description of the Improved

Property– and here lies the crux of this matter– the language on the second page of the text (quoted

above) stated that the property encumbered by the Security Deed – the Vacant Parcel described in

Exhibit A – had an address of 841 Puckett Street, Silver Creek, Georgia 30173.  Chase argues that

this street address belongs to the Improved Parcel, and despite the omission of a legal description

---

[13]Exhibit J to the Complaint.  The Name Change Deed and the Security Deed were recorded back-to-back on the public records, with the Name Change Deed being recorded first.

[14]Exhibit L to the Complaint.

[15]In the Debtor's Loan Application (Exhibit K to the Complaint) she represented that she intended to occupy the property having an address of 841 Puckett Road.  Obviously she could only occupy the Improved Parcel where her residence was situated, not the Vacant Parcel.

of the Improved Parcel, the inclusion of its street address was sufficient to put a prospective purchaser on notice that the parties intended for the Security Deed to encumber the Improved Parcel and further inquiry was required.[16]

Finally, the notation "MAP 034 Parcel 050H" was hand-written at the bottom of the front page of the Security Deed. According to the tax assessor's records, this notation was the tax parcel number for the Vacant Parcel; the Improved Parcel had a separate tax parcel number not found in the Security Deed.[17]

*Foreclosure of Security Deed*

The Debtor defaulted under the Security Deed and on December 4, 2007 Chase exercised its power of sale and foreclosed.[18] The Deed Under Power executed and recorded in connection with the foreclosure sale contained the legal description of the Vacant Parcel as the foreclosed property,

---

[16]Chase's position begs the question: If 841 Puckett Street was the address of the Improved Parcel, what was the street address of the Vacant Parcel? Perhaps because the Two Parcels were adjacent and under common ownership, and one was vacant and the other was improved with a residence, they shared the same street address. On the other hand, if the Two Parcels did not share a common address, then the Security Deed suffered from two omissions: The legal description of the Improved Parcel was omitted from the Exhibit, and the street address of the Vacant Parcel was omitted from the text. The tax records for the Vacant Parcel, Exhibit A to the Complaint, stated "No buildings associated with this parcel," and for its location address stated "Puckett Rd" with no street number.

[17]Exhibits A and B to the Complaint.

[18]Chase was listed in Debtor's Schedule F as having an unsecured claim for $81,978.00. The description of the claim was: "Opened 10/26/04 Last Active 6/3/07 FHA Real Estate Mortgage Foreclosure." On Schedule A, the Debtor listed "NONE" under the description of any real property she owned. In her petition, the Debtor listed her address as being in Gadsden, Alabama. Accordingly, at the time she filed her bankruptcy case the Debtor obviously believed the Security Deed had encumbered the Two Parcels and that the foreclosure by Chase had disposed of the Two Parcels.

7

but there was no mention of the Improved Parcel by legal description, street address or otherwise.[19]

Following the foreclosure, Chase discovered that the Security Deed had not contained the legal description of the Improved Parcel, and apparently being unaware of the Debtor's pending bankruptcy, filed suit on April 2, 2009 in the Superior Court of Polk County seeking to set-aside the foreclosure sale and reform the Security Deed so it would include the Improved Parcel.[20]  Now that Chase is aware of the Debtor's pending chapter 13 case and attendant automatic stay, the Court assumes the suit filed in the Superior Court has been put on hold or dismissed.

<u>BURDEN OF PROOF</u>:

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, which is made applicable to bankruptcy adversary proceedings by Bankr. Rule 7056. Summary judgment may be granted to a movant "if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  The court may grant summary judgment with respect to facts not controverted, and direct further proceedings with respect to those that remain in controversy. Fed. R. Civ. P. 56(d).  In determining whether summary judgment should be granted or denied, the facts are to be considered in a light most favorable to the non-moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S. Ct. 2548 (1986).

---

[19]Exhibit M to the Complaint.

[20]Paragraphs 44 - 47 of the Complaint.  The fact that Chase and its attorney conducting the foreclosure did not discover the defect in the Security Deed before the foreclosure is suggestive that a prospective purchaser of the Improved Parcel searching the public records would not have been put on notice that the Security Deed possibly contained an error and further inquiry was required.

8

<u>CONCLUSIONS OF LAW</u>:

Relying on Section 544(a)(3) of the Bankruptcy Code, the Trustee argues that she is entitled to avoid any interest Chase might have in the Improved Parcel because a bona fide purchaser would have taken title thereto free of any lien purportedly created by the Security Deed. Section 544(a)(3) provides that–

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by –
>
> \*        \*        \*
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.[21]

In response to the Trustee's argument, Chase claims that a purchaser of the Improved Parcel would not have achieved bona fide status because the information in the public records with respect to the Improved Parcel and the Security Deed was sufficient to put a prospective purchaser on notice that Chase may be claiming an interest in the Improved Property and further inquiry was required.

On the petition date a purchaser of the Improved Parcel would have had constructive notice gleaned from the public records that title to the Improved Parcel was vested in Lisa Stokes–the name in which the Debtor was conveyed title under the six quit claim deeds recorded on August 2, 2004.[22] Based on the evidence, no other instrument appeared on the public records containing the legal description of the Improved Parcel and the Debtor's name as Lisa Stokes, or for that matter any other

---

[21]As mentioned above, the Two Parcels are located in Polk County, Georgia, so for the purpose of Section 544(a)(3) the applicable law under which the transfer vis-a-vis the Security Deed should be scrutinized is that of Georgia.

[22]Exhibit G to the Complaint.

9

name by which she was known. Nonetheless, if a purchaser had searched the public records for the name of Lisa Stokes he would have found the Security Deed, but the Security Deed does not contain the Improved Parcel's legal description; it contains only the Vacant Parcel's legal description in an attached Exhibit. The Security Deed does, however, state that the Vacant Parcel as described in the Exhibit "has the address of 841 Puckett Road, Silver Creek, Georgia 30173," which Chase argues is sufficient reference to the Improved Parcel to put a purchaser on notice.[23]

Chase cites the Georgia Supreme Court's decision in *Deljoo v. SunTrust Mortgage, Inc.,* 668 S.E.2d 245 (Ga. 2008) as supporting its position. In that case, the legal description on an exhibit to a security deed made by S&F Construction in favor of Deljoo mistakenly described the property being conveyed as being in Land Lot 18, instead of the correct designation of Land Lot 28. The description in the exhibit further described the property by specific lot numbers per a plat that had been recorded in a plat book in the county records. Subsequently, S&F Construction sold the same

---

[23]In its Complaint, Chase alleged that the Name Change Deed, like the Security Deed, mistakenly omitted the legal description of the Improved Parcel and included only that of the Vacant Parcel. Perhaps it was a mistake that the description of the Improved Parcel was omitted from the Name Change Deed; however, the deeds conveying the Improved Parcel to the Debtor identified the grantee therein as "Lisa Stokes f/k/a Lisa Holsey." Thus, including the Improved Parcel in the Name Change Deed would not have changed the name of the record owner of Improved Parcel; it was already in the name of Lisa Stokes, the same grantee as in the Name Change Deed with the minor, and immaterial difference of not including her middle initial.

In *Real Estate Operators, Inc. v. McMahon,* 155 S.E. 755 (Ga. 1930), the Georgia Supreme Court stated "[t]he rule in this state is that a recorded deed, in order to operate as a constructive notice to a bona fide purchaser of land, must be a link in the purchaser's chain of title. . . . A deed lying outside of a purchaser's chain of title is not constructive notice of the instrument." *McMahon*, 155 S.E. at 759 (citations omitted). It is apparent that before the Security Deed was executed, the Debtor's marital status changed and as a result her last name changed from Holsey to Stokes, and the Name Change Deed was executed and recorded so the public records would reflect that the name of the owner of the property to be encumbered by the Security Deed would be the same as that of the grantor in the Security Deed.

10

lot to Vanguard Builders, and in turn Vanguard sold the lot to Milton, who obtained financing from, and gave a security deed to SunTrust Mortgage.

The deed to Milton and the security deed to SunTrust contained the same description of the property as that in the Deljoo security deed except there was no error made in the designation of the land lot number. Although the security deed made in favor of Deljoo had been duly recorded in the public records, the initial title examination by Milton, made before she purchased the property and gave a security deed to SunTrust, failed to reveal the Deljoo security deed. The Deljoo security deed was later discovered by SunTrust who sued for its cancellation. The trial court and court of appeals ruled "that the error in Deljoo's security deed took it out of the chain of title and that Milton and SunTrust were bona fide purchasers for value without notice of the deed." *Id.* at 439.

In its opinion, the Georgia Supreme Court explained the standard by which to measure the sufficiency of descriptions found in conveyances of Georgia real property:

> [I]t is essential that the description of the land in the conveyance should be reasonably certain and sufficient to enable subsequent purchasers to identify the premises intended to be conveyed; but while the description may be inaccurate, meager or erroneous, yet if it is expressed in such a manner or connected with such attendant circumstances as that a purchaser should be deemed to be put upon inquiry, if he fails to prosecute this inquiry he is chargeable with all the notice he might have obtained had he done so.

*Id.* at 439 - 40 (quoting *Talmadge Bros. & Co. v. Interstate Bldg. & Loan Assn.*, 31 S.E. 618 (Ga. 1898)). Additionally, the supreme court observed that a "meager description will suffice for notice purposes when accompanied by reference to [an]other mortgage containing [the] correct description." *Deljoo* 668 S.E.2d at 246, *citing Commodity Credit Corp. v. Wells,* 3 S.E.2d 642 (Ga. 1939).

The supreme court reversed the two lower courts and held that the error in the land lot

11

number in Deljoo's security deed was overcome by the reference to the recorded plat where an accurate description of the encumbered property could be found. In so holding, the court stated that:

> The reference in Deljoo's [security] deed to the . . . subdivision plat by book and page number "is considered as incorporated in the deed itself." *Talmadge, supra* at 554, 31 S.E. 618. . . . [T]he incorporation of the subdivision plat provided a key to locating the property. . . . We restate with approval the holding in *Talmadge, supra* at 553, 31 S.E. 618: "Where a deed is recorded, the record is not only constructive notice of the recorded deed and its contents, but it will also be notice of all other deeds and their contents to which reference is made in the recorded deed."[24]

*Deljoo*, 668 S.E.2d at 247.

While the discussion in *Deljoo* of Georgia law regarding the sufficiency of property descriptions is instructive, the issue in *Deljoo* was different from that in the instant case. *Deljoo* involved an error in the legal description – apparently a typographical or scrivener's error – and the Georgia Supreme Court held that a cross reference in the security deed to another recorded document appearing in the chain of title that contained an accurate description was sufficient to overcome the error and put a prospective purchaser on constructive notice. In the instant case the legal description in the Exhibit to the Security Deed is unquestionably sufficient and free of errors; it is an accurate legal description of the Vacant Parcel owned by the Debtor, and the Vacant Parcel was intended by the parties to be encumbered by the Security Deed. Here the mistake was not a defective or inaccurate legal description, it was the complete omission of the legal description of a separate parcel.

Accordingly, the Court must determine whether the Security Deed, in which the Improved

---

[24]The description of the Vacant Parcel in the Exhibit to the Security Deed contained just such a cross reference. After describing the Vacant Parcel by its metes-and-bounds legal description it continued: "Being the same property conveyed to Lisa L. Holsey by deed from Dewitt Holsey recorded 08/12/1999 in deed book 626 page 69, in the Office of the Clerk of the Superior Court of Polk County, Georgia."

Parcel was peripherally, or perhaps incidentally, identified only by mere street address, should be considered as being in the Improved Parcel's chain of title and thereby serve as constructive notice to a prospective purchaser.[25]  Several factors mitigate against Chase's claim that a purchaser of the Improved Parcel should be charged with notice because of the inclusion of the street address in the Security Deed:  the text of the Security Deed unequivocally identified the street address as belonging to the Vacant Parcel which was described in the Exhibit by an accurate legal description as well as a cross-reference to another recorded document (*see Deljoo supra*); the Vacant Parcel was adjacent to, and had common ownership with, the Improved Parcel; the Vacant Parcel, like the Improved Parcel, abutted Puckett Road (the street named in the address); and being unimproved, the Vacant Parcel either had no number in its street address (as shown on the tax assessor's records), or because they had common ownership and were adjacent, the Two Parcels shared a common number in their street address.

In *Swan Kang, Inc. v. Tae Sang Kang (Yi),* 534 S.E. 2d 145 (Ga. Ct. App. 2000) and *Greenspan v. Caison,* 114 S.E. 2d 803 (Ga. Ct. App. 1960) the Georgia Court of Appeals found that properties described, respectively, as "4280 Lawrenceville Hwy, N.W.[,] Lilburn, the County of Gwinnett, State of Georgia 30247," and "126 Ashby Street, S.W., according to the present system of numbering houses in the City of Atlanta," were legally sufficient for the purpose of enforcing sales contracts.  Nonetheless, those cases did not involve the sufficiency of descriptions by mere street addresses appearing in recorded documents and they did not involve whether one of the parties qualified as a bona fide purchaser without notice.  In those cases all the parties necessarily had actual

---

[25]The Court considers the inclusion of the street address in the Security Deed as *peripheral* or *incidental* because the reference to the legal description in the attached Exhibit would naturally be the focal point for an inquiry into what property was encumbered.

13

knowledge as signatories to the contracts.

The Six Circuit Court of Appeals in *Argent Mortgage Co., LLC v. Drown (In re Bunn),* 578 F.3d 487 (6th Cir. 2009) held that a mortgage which only described the encumbered property by its street address and tax identification number was sufficient to defeat a bankruptcy trustee's claim that he could avoid the mortgage under his strong arm powers. The bankruptcy court had ruled in favor of the trustee, but on appeal was reversed by the district court. The circuit court noted that although no legal description of the property was contained in or attached to the recorded mortgage, the recorded deed conveying the property to the mortgagor identified the property by the same tax parcel identification number as that appearing in the mortgage. The trustee argued that because the mortgage did not contain a legal description it was impossible to determine whether the mortgagor intended to mortgage all or only a portion of the property. The Six Circuit rejected that argument, noting that "[m]ortgaging part rather than all of a single-dwelling residential subdivision property is far enough outside the ordinary course of business that a reasonable prospective purchaser should assume that an ambiguous mortgage likely intended to encompass the entire residential lot at issue." *Id*. at 489 - 90. The court said that Ohio law "does not appear to require a precise legal description of the mortgaged property. . . . [T]he trustee points to no case in which an Ohio court has invalidated a mortgage that has an accurate informal description but lacks a formal description." *Id.* at 490. The circuit court affirmed the district court's reversal of the bankruptcy court, and held:

> [A] reasonably prudent real estate purchaser, upon discovering that a residential lot has a mortgage that describes the lot by address but not by plat number when both address and plat number are on the granting deed and the seller owns no other real estate in the county, is unlikely to proceed as if the lot were unencumbered. Thus no purchaser could attain BFP status, and the trustee may not use his strong-arm powers to set aside the mortgage.

14

*Id.*

While at first glance the facts in *Argent Mortgage* may appear similar to those in the instant case, there are significant differences beyond the applicable law being that of different states. First, the hand written parcel number on the first page of the Security Deed in the instant case is, according to the records of the Polk County Board of Tax Assessor, the tax parcel number of the Vacant Parcel and such records designate the Vacant Parcel's "location address" as "Puckett Rd." The Improved Parcel was assigned a different tax parcel number and its location is shown as "841 Puckett Rd." The tax assessor's records state that the Vacant Parcel is 1.27 acres and the Improved Parcel is 1 acre, and the public records reflect that the Debtor's respective titles in the Two Parcels were acquired at different times and from different sources. Thus, unlike *Argent*, there was nothing ambiguous about one of the Two Parcels being encumbered by the Security Deed and not the other. And while the mortgage in *Ardent* contained no legal description, the Security Deed in this case did contain an ostensibly complete legal description that described a parcel of land situated on Puckett Road and owned by the Debtor.

The facts in *Richardson v. Wells Fargo Home Mortgage, Inc. (In re Brandt),* 421 B.R. 426 (Bankr. W.D. Mich. 2009) were virtually identical to those in *Argent*. The legal description of property purchased by Brandt referred to a lot number on a subdivision plat recorded in the official county records. The mortgage made by Brandt in favor Wells Fargo referred to an attached legal description for a description of the mortgaged property; however the mortgage was recorded with no attachment, but it did contain the street address and tax identification number of the property. Thereafter, Brandt filed a chapter 7 case. When the trustee discovered the mortgage contained no legal description he filed a complaint seeking to avoid the mortgage pursuant to Section 544.

15

Relying on the Sixth Circuit's opinion in *Argent*, Wells Fargo argued that, although the mortgage contained no legal description, the street address and tax identification number supplied sufficient notice under Michigan law. The bankruptcy court disagreed, and held that while such a limited identification may suffice under Ohio law, Michigan law specifically required that when a subdivision plat has been recorded, the lots in that subdivision must be described by reference to the plat and lot numbers for all purposes, including any conveyance, and any other description, including a metes-and-bounds description, is to be treated as a mere nullity. Thus, the trustee was able to avoid the mortgage under her Section 544 strong powers. *Id.* at 431.

In *Hanrahan v. University of Iowa Community Credit Union (In re Thomas),* 387 B.R. 4 (Bankr. N.D. Iowa (2008), the trustee sought to avoid the Credit Union's mortgage under Section 544(a)(3). The street address of the debtor's property was 117 Valley Road, and his next-door neighbor's address was 109 Valley Road. Although the debtor's correct street address was used in the mortgage, it mistakenly contained the legal description of his neighbor's property. Ruling for the trustee, the bankruptcy court stated:

> Almost universally, however, courts have adopted a different analysis when the legal description is correct but describes the wrong property. These holdings provide that if a legal description is so inaccurate or faulty as to be actually misleading, it does not constitute constructive notice to third parties. This is true of all cases in which the mortgage contains a correct legal description but describes a parcel other than the subject property. It is this proposition which is implicated here and provides the appropriate framework for a determination of whether the legal description in this case provides constructive notice. . . .

> Therefore, if the legal description on a mortgage describes a completely different parcel, the mortgage fails to provide constructive notice to third parties. The Credit Union's arguments may have equitable appeal if the conflict were between the mortgagor and mortgagee. This Court must analyze the defect, however, as if Trustee is a bona fide purchaser without notice. Under these circumstances, equitable principles, such as reformation, do not apply.

16

*Id.* at 10 - 11.

The facts in the instant case, while similar to those in *Thomas*, are even more supportive of a finding that the Trustee is entitled to assume the role of a bona fide purchaser. Unlike *Thomas*, both the street address and legal description in the Security Deed pertained to property owned by the Debtor. If a prospective purchaser had searched the public records with respect to the legal description in the *Thomas* mortgage he would have discovered that the property was not owned by the debtor, but a similar search in the instant case would have confirmed that title to the property described by the legal description in the Security Deed was in fact vested in the Debtor.

The Court concludes that Georgia law regarding *defective* property descriptions in conveyances does not apply to the facts in this adversary proceeding. To decide the issues in this case the Court does not need to determine whether the property described in the Exhibit to the Security Deed was "manifestly too meager, imperfect, or uncertain to serve as an adequate means of identification."[26] Rather the legal description in the Exhibit to the Security Deed was without question adequate on its face and the error, to the extent there was one, was that the *number* in the street address may not have belonged to the Vacant Parcel. Under these facts the Court finds that a reasonable prospective purchaser was not charged with making an inquiry into whether the street number in the Security Deed was that belonging to the Vacant Parcel, which was adequately described by legal description in the Exhibit.

A street address is a location, not a description. It may designate the location of a house situated on a small city-lot or on hundreds of rural acres. A street address directs where mail is to be delivered, where to respond to 911-calls or other emergencies, and provides visitors with a

---

[26] *Commodity Credit Corp. v. Wells,* 3 S.E.2d 642, 644 (Ga. 1939).

17

destination, but it does not describe a quantity of property as does a legal description. After reviewing Georgia case law, and that of other states on this subject, the Court concludes that historically real property has not been conveyed or encumbered by mere street address; legal descriptions, whether metes-and-bounds or recorded plat, or reference to previously recorded instruments containing legal descriptions, are universally utilized in instruments intended for recordation, and such descriptions are justifiably the primary focus of persons searching titles in public records. This Court does not believe that Georgia courts would burden prospective purchasers (including their attorneys and title insurers) with the chore of confirming the accuracy of a street-address number when it is juxtaposed with an otherwise adequate legal description, especially when the legal description confirms the subject property abuts the same street as that stated in a street address appearing (often peripherally) in the recorded instrument under review. In other words, when a conveyance contains both the street address and legal description of property, in most situations a prospective purchaser is justified in limiting his search of the public records to the property described by detailed legal description, which is the conventional and exact method of describing property, especially, as in this case, when the property described by legal description has frontage on the road stated in the street address. The integrity of titles to real property as reflected in public records is extremely important, and requiring inquiries and searches that go beyond what reasonably should be expected would place in doubt titles that, through custom and practice, have been accepted as sufficient to bestow upon grantees and mortgagees without actual knowledge, the advantages of a bona fide purchaser.

Thus, the Court concludes that there was nothing appearing in the public records pertaining to the Improved Parcel that would have put the Trustee on notice or required her further inquiry with

Case 09-40107-JJR    Doc 23    Filed 05/10/10    Entered 05/10/10 16:14:09    Desc Main
Document      Page 18 of 22

regards to the Security Deed encumbering the Improved Parcel. Hence, as far as any constructive notice gleaned from the public records is concerned, the Trustee may avoid the Security Deed under Section 544(a)(3) as an encumbrance of the Improved Parcel.

Nonetheless, beyond what was shown – or more accurately not shown – on the public records there is one condition under Georgia law that the Trustee must have satisfied before she could qualify for bona fide purchaser status. According to the Georgia Supreme Court:

> "Possession of land shall constitute notice of the rights or title of the occupant." OCGA § 44-5-169 (Code Ann. § 85-408). In order for the possession to have the effect of notice, it must be actual, open, visible, exclusive, and unambiguous. . . . "Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led. . . . OCGA § 23-1-17 (Code Ann. § 37-116)." . . . [O]nce appellant found appellees in actual, open, visible, exclusive, and unambiguous possession of the property, he had an affirmative duty to inquire of Mrs. Wyckoff [appellee] concerning appellees' rights in the premises and as a consequence of his failure to do so, he may not now prevail.

*Bacote v. Wyckoff*, 310 S.E.2d 520, 524(Ga. 1984) (some internal citations omitted). *See also Yancey v. Harris,* 216 S.E.2nd 83 (Ga. 1975).

The facts in *In re Alicastro*, No. 88-02905, 1989 WL 65525 (Bankr. W.D. Pa. June 15, 1989), decided under Pennsylvania law, are virtually identical to those in the instant case, and the laws of Pennsylvania and Georgia appear to be the same with respect to constructive notice imputed to a prospective purchaser when the subject property is not occupied by its record owner. In *Alicastro,* the debtor owned two adjacent lots: lot 85 and lot 84. Lot 84 had been improved with a dwelling, and Lot 85 was vacant. The debtor gave a mortgage to Household Realty, which mistakenly only referred to vacant Lot 85, although the dwelling's address (51 Carlisle Street, Uniontown, Pa. 15401) followed the vacant lot's description. After she filed her bankruptcy petition, the debtor surrendered possession of both lots, including the dwelling, to Household and agreed to give Household a deed-

19

in-lieu of foreclosure. Before the deed-in-lieu was delivered, the mistake was discovered and Household sought reformation of the mortgage. The bankruptcy court held that the trustee's strong-arm powers under 544(a)(3) prevented reformation. However, in ruling for the trustee, the *Alicastro* court raised an issue that is also critical to the instant case:

> Had the Debtor vacated the property prior to the time that the bankruptcy was filed, the controlling case would be *McCannon v. Marston, 679 F.2d 13 (3d Cir. 1982)*. In *McCannon*, actual possession of the property at issue was by one other than the Debtor-owner. The Court of Appeals for the Third Circuit held that actual possession by one other than the owner imposed a duty to inquire and defeated the rights of one claiming the status of a *bona fide* purchaser for value *without notice*. Actual possession constituted sufficient notice to prohibit the use of the strongarm provisions of § 544.

*Id.* at * 2.

The record in the instant case shows that the Debtor vacated the Improved Parcel before she filed her petition for relief. Her schedules indicated that she lived in Alabama, that Chase had foreclosed the Security Deed pre-petition, and Chase's claim was unsecured. A prospective purchaser of the Improved Property would have discovered from the public records of Polk County, Georgia that title to the Improved Property was vested in the Debtor, and therefore would have expected to find her in possession on the petition date. But the Debtor was not in possession.

Due to the lack of evidence, the Court cannot determine what a physical inspection of the Improved Parcel on the petition date would have disclosed, other than it was not in the possession of the Debtor. Accordingly, the Court will not speculate regarding what such an inspection might have revealed, and its impact on the Trustee's status as a hypothetical bona fide purchaser.

<u>CONCLUSION</u>:

Nothing in the public records or tax assessor's records of Polk County, as of the petition date,

20

was sufficient to give constructive notice to a reasonable prospective purchaser that the Security Deed was intended to encumber the Improved Parcel or that warranted further inquiry with regard to the possibility that the parties intended the Security Deed to encumber the Improved Parcel. Thus, as far as such records are concerned, the Trustee is entitled to exercise her strong-arm powers under Section 544(a)(3) and avoid any interest Chase claims to the Improved Parcel by virtue of the Security Deed. However, under the laws of Georgia, a purchaser is charged with whatever notice might be gained by an inspection of the property, including its occupancy. There was no evidence from which the Court could make a ruling concerning what an inspection would have revealed, if anything, and whether any knowledge obtained from such an inspection would have put the Trustee, as a hypothetical purchaser, on notice that prudence required further inquiry. Accordingly, the Trustee's Motion for Summary Judgment is due to be granted in part and denied in part. It is to be granted in so far as the public records and tax assessor's records failed to serve as constructive notice of the Security Deed, and it is to be denied as to what notice, if any, should be imputed to the Trustee had she inspected the Improved Parcel on the petition date. The later issue will be decided at trial or by evidence presented in support of another dispositive motion.[27]  Pursuant to Bankr. Rule 9021

---

[27]The Trustee has not filed a counterclaim in which she affirmatively seeks to avoid the lien of the Security Deed with respect to the Improved Parcel. The Trustee has filed a motion to modify the Debtor's chapter 13 plan and thereby proposed to treat the Improved Parcel as unencumbered property of the estate. However, such motion to modify does not state a claim upon which relief under Section 544(a)(3) can be granted. Even if the Court should grant the motion to modify that will not have the effect of avoiding the lien of the Security Deed. Likewise, the Trustee's motion for summary judgment seeks a denial of the relief sought by Chase in its complaint, but the Trustee's motion for summary judgment is not a pleading through which an affirmative claim may be asserted. A claim seeking affirmative relief (as opposed to the denial of relief sought by an adverse party), should be asserted in a complaint, counterclaim, cross-claim or third-party complaint. *See* Bankr. Rules 7007, 7008, 7013, 7014, which provide that Rules 7, 8, 13 and 14, respectively, of the Federal Rules of Civil Procedure apply in adversary proceedings.

21

a separate Order will be entered in conformity with this Opinion.

Dated:  May 10, 2010

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge

22